UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANNE WARWICK,

              Plaintiff,                Case No. 2:22-cv-11707
                                            District Judge Mark A. Goldsmith
v.                                  Magistrate Judge Anthony P. Patti

CITY OF DETROIT, *et al*.,

              Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT SEVERAL MOTIONS TO DISMISS (ECF Nos. 17, 23, 25, 29, 32)

**I.    RECOMMENDATION**:  The Court should:  **(1) GRANT** Defendants City of Detroit, Duggan, White, Garcia, Rogers, and Walker's motion to dismiss (ECF No. 17) (Section II.E.2); **(2) GRANT** Defendants Harris and Securitas Security Services' motion to the extent it seeks dismissal (ECF No. 23) (Section II.E.3); **(3) GRANT** Defendants Jodi DeAngelo and Ramel's motions to dismiss (ECF Nos. 25, 32) (Section II.E.4); and, **(4) GRANT** Defendants' Hines and Kennedy's motion to the extent it seeks dismissal (ECF No. 29) (Section II.E.5).

**II.    REPORT:**

### A.    Background

Joanne Warwick was admitted to the State Bar of Michigan in November 1998 and is an active member, in good standing.  *See* www.michbar.org, "Member

Directory."  Warwick has previously filed other matters in this Court on her own behalf.  *See*, *e.g.*, *Warwick v. City of Detroit, et al.*, Case No. 2:19-cv-12429-LVP-EAS (stipulated order of dismissal entered June 8, 2022); *Warwick v. Flake*, Case No. 2:19-cv-13052-LVP-EAS (consolidated with 19-12429 on Apr. 7, 2020); and, *Warwick v. Bryant, et al.*, Case No. 2:22-cv-10896-DML-APP (complaint dismissed without prejudice on May 12, 2022).  Therefore, she is not the typical *pro se* Plaintiff who appears before this Court.

### B.    Twenty identified Defendants

Warwick filed the instant fee-paid lawsuit on her own behalf on July 25, 2022, naming twenty Defendants and three sets of Doe Defendants.  (ECF No. 1, PageID.2-3, 8-11.)  Plaintiff claims her lawsuit is based on federal question jurisdiction (*see* 28 U.S.C. § 1331), if not also diversity of citizenship (*see* 28 U.S.C. § 1332).  (ECF No. 1, PageID.4; *see also id*., PageID.6.)  She seeks various forms of damages.  (*Id*., PageID.5.)

The original complaint remains the operative pleading, as the Court has stricken Plaintiff's attempt(s) to amend.  (*See* ECF Nos. 31, 34, 37, 38.)

### C.    Seven non-appearing Defendants

Summonses for the Defendants were issued on November 21, 2022.  (ECF No. 9.)  Of the twenty identified Defendants, most have appeared.  Currently, service of process is outstanding as to seven of the identified Defendants, namely:

(1) James Craig (former Chief of the Detroit Police Department); (2-5) Darryl Cross, Dane Hunter, Raymond Buford, & Dixon (DPD Officers); (6) Jesse Little; and, (7) Dr. Rauf (of Neighborhood Service Organization (NSO) Life Choices). "If a defendant is not served within 90 days after the complaint is filed, the court— *on motion* or *on its own after notice to the plaintiff*—must dismiss the action *without prejudice* against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m) (emphases added).  Ninety days from the July 25, 2022 filing of the complaint is Sunday, October 23, 2022; moreover, ninety days from the November 21, 2022 issuance of the subpoenas is Sunday, February 19, 2023.  Accordingly, under separate cover, the Court will require Plaintiff to show cause as to why her claims against these seven defendants should not be dismissed for her failure to serve them in accordance with Rule 4(m).

### D.  Thirteen appearing Defendants

Thirteen defendants have appeared:  (1-2) James Harris and Securitas Security Services (ECF No. 14, 15); (3-8) City of Detroit, Mike Duggan, Lawrence Garcia, Sydney (Sydnee) Rogers, Shannon Walker, James White (ECF No. 17); (9) Greg McDuffey (McDuffee) (ECF No. 21); (10-11) Jodi DeAngelo and Ramel

(ECF Nos. 25, 32); and, (12-13) Hines Real Estate Firm and Michael Kennedy (ECF Nos. 27, 28).

On March 2, 2023, the Court entered a stipulation and order for dismissal with prejudice of Defendant McDuffey (McDuffee) only.  (ECF No. 43.) Currently before the Court are five motions to dismiss filed by twelve Defendants:

- Defendants City of Detroit, Mayor Mike Duggan, Police Chief James White, former Corporation Counsel Lawrence Garcia, Assistant Corporation Counsel Sydnee Rogers, and Assistant Corporation Counsel Shannon Walker's December 22, 2022 motion to dismiss (ECF No. 17), as to which Plaintiff's response was due on January 23, 2023 (ECF No. 18);

- Defendant James Harris & Securitas Security Services' January 3, 2023 motion to dismiss, or in the alternative, for a more definite statement (ECF No. 23), as to which Plaintiff's response was originally due on February 6, 2023 (ECF No. 24), but the due date was later extended to February 13, 2023 (ECF No. 38), and Plaintiff filed a timely response (ECF Nos. 39, 40);

- Defendant DeAngelo's January 11, 2023 motion to dismiss (ECF No. 25), as to which Plaintiff's response was due on February 13, 2023 (ECF No. 26);

- Defendants Hines Real Estate Firm and Michael Kennedy's January 11, 2023 Motion to Dismiss, or in the Alternative, For a More Definite Statement (ECF No. 29), as to which Plaintiff's response was due on February 13, 2023 (ECF No. 30); and,

- Defendant Ramel's January 20, 2023 motion to dismiss (ECF No. 32), as to which Plaintiff's response was due on February 21, 2023 (ECF No. 33).

These motions request dismissal with prejudice.  (ECF No. 17, PageID.99; ECF

No. 23, PageID.161; ECF No. 25, PageID.171; ECF No. 29, PageID.201; and,

ECF No. 32, PageID.211.)

   To date, Plaintiff has filed only one response; thus, all but one of these

motions are unopposed.  *See* E.D. Mich. LR 7.1(c)(1) ("A respondent opposing a

motion must file a response, including a brief and supporting documents then

available.").  Still,

> . . . a district court cannot grant summary judgment in favor of a
> movant simply because the adverse party has not responded.  The
> court is required, at a minimum, to examine the movant's motion for
> summary judgment to ensure that he has discharged that burden.  We
> see no reason why the situation should be different in the context of a
> motion to dismiss for failure to state a claim under Fed.R.Civ.P.
> 12(b)(6).

*Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  Accordingly, the Court must

consider whether the various Defendants have discharged their burden under Fed.

R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted") or

Fed. R. Civ. P. 12(e) ("Motion for a More Definite Statement.").

   **E.    Discussion**

      **1.    Plaintiff's "Statement of Claim"**

   In her "statement of claim," Plaintiff alleges that, on July 24, 2019, she

"peacefully entered the Coleman A. Young Municipal Center (CAYMC) to go to

the Law Dep[artment] and file a FOIA request."  (ECF No. 1, PageID.5.)

According to Plaintiff's handwritten, completely narrative complaint – which meanders in various directions and contains side notes, angled writing, arrows and missing punctuation – on July 24, 2019:

> Securitas officials let [her] enter carrying her property with her which included a sign she earlier held at a rally.  Warwick arrived [by] bicycle and had no car [in which] to put her belongings.  [She] discussed her sign w[ith] the entry security guards and explained that she was not there to protest, but was going to file a FOIA request.  They let her enter.  One or two guard[s] read her sign as she had just passed the metal detector.  [She] saw the guards reading the sign and told them the other guards said it was okay.

> Then one guard said[,] "It's okay, as long as it isn't about Mike Duggan."  [Warwick] replied, "That wouldn't be legal."  [She] peacefully proceeded to the elevator.  Jesse Little of Securitas called her back to the entry area.  He told her she couldn't bring in the sign.  She said the other people said it was okay and let her in.  Previously [she] had been mistreated and physically abused in the CAYMC by police offers who had unlawfully asked her to leave the building.

> Feeling this was continued harassment, she asked for proof she couldn't bring in a sign.  Mr. Little went into his office and stayed there for approx[imately] 2 minutes.  On information [and] belief, Mr. Little on orders of Mike Duggan, Raymond Buford, Greg McDuffey [McDuffee] and other Does sought to get Ms. Warwick out of the building in retaliation for the content of her sign.  One side read "Michigan Trusts Bernie, so does Cardi B and Dr. Cornel[] West[.]"  The other side said "Kamala covered for corrupt law enforcement don't trust Kamala Harris ¡ Que Mala !"  Mike Duggan was a Biden supporter and on information [and] belief Mike Duggan either knew the Democratic ticket was going to be Biden-Harris or he didn't want Warwick in the building [because] Kamala Harris, Warwick suspects was in the building after being at the NAACP [National] Convention at the now TCF Center.  Also, Mike Duggan knows Ms. Warwick is a vocal critic of his administration, policies and the Detroit Land Bank Authority which he essentially controls.  She speaks at public meetings and on 910 am radio on those topics.

Warwick believes Little or others called Officer Darryl Cross to get her out of there – regardless of her sign.

Officer Cross approached Warwick in a harassing way and kept telling her to leave "Because I said so." At one point, he grabbed her sign – battering her at which point Warwick protested the battery. On information & belief Dane Hunter was told a false story about Warwick and asked to assist Cross. He with Cross maliciously shoved her out the door [without] doing a due diligen[ce] investigation of the matter. Warwick picked up her belongings and attempted to reenter. Officer Cross then grabbed her and brutally slammed her to the ground. Then Hunter & Cross cuffed her. One hand-cuff was too tight, yet they refused to loosen it despite Ms. Warwick's pleas. They had her in cuffs for approx[imately] 40 minutes and yet no one brought her proof[.] She couldn't bring in the sign despite Warwick's repeated requests for it. At one point Cross said something like "Don't' worry about the sign security wanted you out. So you're going to go out and now you're going out." Neither officer gave her a citation. EMS truck transferred her to the Detroit Medical Center where a health professional properly screened her for suicidal or homicidal i[nt]entions. She correctly wrote in her report that Ms. Warwick had been assaulted & battered by a peace officer and that she wasn't homicidal and treated her bloody injured ankle & at this point Ms. Warwick couldn't walk [illegible]. Ms. Warwick asked to see a psychiatric doctor to help document this abuse. She and two nicer cops who were guarding her then waited hours for a doctor. Dr. Rauf showed up finally, appeared frazzled and spent . . . what felt like 60 second asking about her medi[c]ation.

She was then transferred to the Detroit Detention Center and was put in a solitary cell with a camera in it. 3 female[s] and one male guard came into the solitary cell and told her to take her clothes of[f] to put on a "Bam" suit. Warwick asked what it was for. A female said something like "You must have told someone at the hospital that you were thinking of hurting yourself or others." Warwick knew this wasn't true. The female guards jumped her . . . struggled with her took her clothes off and left her butt naked in a cell [with a] camera in it. This was the early morning of July 25th. Then she was let out on personal bond.

The City of Detroit Prosecutor Lawrence Garcia, Sydney Rodgers [Sydnee Rogers] & . . . Shannon Walker charged Ms. Warwick with "disorderly conduct." [This charge was filed on August 1, 2019, dismissed on January 21, 2020, re-filed on January 27, 2020, and again dismissed on November 16, 2021.[1]] The false and unconstitutional charge was eventually dismissed, after it had been filed twice. Warwick suffered injury to her right ankle and was on crutches for [approximately] two weeks. She had bruises from being assaulted & battered at Detention Center – where Nurse Ramel failed to properly screen her[.]

Sydney [Sydnee] Rogers never produced Cross's body cam video of the incident or the report required to explain why he didn't have it. Later Officer Dixon at CAYMC was giving Warwick a hard time and whispered to her in a creepy voice "I saw the video." She suspects the detention strip video was being passed around.

Warwick believes Securitas personnel Jesse Little, James Harris, and Greg McDuffey [McDuffee] Raymond Buford, Mike Duggan, Michael Hines and Warden Jodi DeAngelo and other detention & police personnel conspired to violate her rights & physical person[.] She suffered physical injury & great emotional distress as a result of the batteries false arrest & incorrect withholding of evidence & false prosecut[ion][.]

The City of Detroit has a pattern & practice custom of abusing people [who] disagree with the administration and permit excessive use of force by officers[.] Police chiefs Craig & White in her opinion were complicit and allowed this to happen[.] Examples of abuse of persons [include] Detroit Will Breathe protestors, arrest of vocal resident/Duggan administration critic Agnes Hitchcock, physical harassment of water rights activist Demeeko Williams and more. This needs to stop.

(ECF No. 1, PageID.5, 7, 12-17.) Warwick "apologizes for her hand-written complaint[,]" claims to suffer from "severe depression[,] sleep deprivation, ADHA

---

[1] *See* 36th District Case Nos. U51784219, U56162120.

and complicated grief[,]" and requests the Court help her to "seek justice and an end to this unconstitutional abuse." (*Id.*, PageID.17.)

There are varied, alleged bases for Plaintiff's claims against Defendants, including 42 U.S.C. §§ 1981 and 1983, the First, Fourth, Fifth, and Eighth Amendments to the U.S. Constitution, and perhaps also state law claims (*e.g.*, false arrest, assault, battery, and "false prosecution," *etc.*). (*Id.*, PageID.4-6.)[2]

### 2. Defendants City of Detroit, Duggan, White, Garcia, Rogers, and Walker (ECF No. 17)

In their motion to dismiss, these City of Detroit Defendants argue that Plaintiff's claims are barred by the statute of limitations, absolute prosecutorial immunity applies, executive city officials are also shielded by immunity, and the complaint violates the Federal Rules of Civil Procedure. (ECF No. 17, PageID.94-99.)

### a. Statute of limitations

"[T]he statute of limitations for claims filed in Michigan based on 42 U.S.C. § 1983 is three years[.]" *Hirmuz v. City of Madison Heights*, 469 F. Supp. 2d 466, 477 (E.D. Mich. 2007). *See also* Mich. Comp. Laws § 600.5805 ("Injuries to

---

[2] In a section labeled, "relief," Plaintiff continues by stating Officers Cross and Hunter "falsely arrested" and "pushed" her out of the Coleman A. Young Municipal Building. (ECF No. 1, PageID.6.) She further claims Cross "brutally slammed" her to the "cement ground," and they "left handcuff [sic] too tight." (*Id.*)

persons or property").  To the extent Plaintiff's claims are based on the alleged

events of July 24, 2019, the three-year statute of limitations set forth in would have

expired on Monday, July 25, 2022.  *See also* Fed. R. Civ. P. 6(a)(1)(C) ("include

the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday,

the period continues to run until the end of the next day that is not a Saturday,

Sunday, or legal holiday.").  Thus, Defendants are inaccurate in stating Plaintiff's

lawsuit "was filed one day late[.]"  (ECF No. 17, PageID.95.)  *See Mowett v. City*

*of Detroit*, No. 16-12971, 2017 WL 85835, at *2 (E.D. Mich. Jan. 10, 2017)

(Cohn, J.) ("As plaintiff points out, August 14, 2016 was a Sunday. Plaintiff

therefore had an additional day, until August 15, 2016, in which to file a timely

complaint.").

### b.    Fed. R. Civ. P. 10

However, Defendants remaining arguments are meritorious.  Plaintiff's

operative pleading's "Statement of Claim" consists of approximately seven hand-

written pages without any numbered paragraphs, in a format that includes the other

irregularities described above.  (See ECF No. 1, PageID.5, 7, 12-17.)  Thus,

Defendants correctly argue that Plaintiff's operative pleading (ECF No. 1) does not

comply with Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in

numbered paragraphs, each limited as far as practicable to a single set of

circumstances. . . .") (emphasis added).  Yet, this motion need not be decided on

the *form* of Plaintiff's pleading, as the Court has discerned the *content* of Plaintiff's

allegations and recommends it is insufficient as to these six Defendants, as follows.

### c.    Prosecutorial immunity (Garcia, Rogers, and Walker)

Defendants convincingly argue that Plaintiff's "claims against former

Corporation Counsel Lawrence Garcia, Assistant Corporation Counsel Sydnee

Rogers, and Assistant Corporation Counsel Shannon Walker are precluded by

absolute prosecutorial immunity."  (ECF No. 17, PageID.95.)  As to these

Defendants, Plaintiff alleges:

- The City of Detroit Prosecutor Lawrence Garcia, Sydney
  Rodgers [Sydnee Rogers] & . . . Shannon Walker charged Ms.
  Warwick with "disorderly conduct."  The false and
  unconstitutional charge was eventually dismissed, after it had
  been filed twice.

- Sydney [Sydnee] Rogers never produced Cross's body cam
  video of the incident or the report required to explain why he
  didn't have it.

(ECF No. 1, PageID.15.)

Presumably, Plaintiff is referring to 36th District Court Case No. U51784219

(dismissed on Jan. 21, 2020) and 36th District Court Case No. U56162120

(dismissed on Nov. 16, 2021), each of which concerned July 24, 2019 offense of

disorderly conduct.  (*See* https://www.36thdistrictcourt.org/online-services/case-

inquiry-schedule.)  While the Undersigned has not been able to locate Garcia or

Walker on the docket of either of these cases, as best the Court can tell, Sydnee

Rogers was the Assistant Prosecuting Attorney (APA) associated with the August 3, 2020 final pre-trial conference in Case No. U56162120.

Nonetheless, "[a] government officer is entitled to absolute immunity for performing functions 'intimately associated with the judicial phase of the criminal process.'" *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). "In *Imbler,* the Supreme Court extended absolute immunity to prosecutors sued for damages under 42 U.S.C. § 1983, holding that a prosecutor is entitled to absolute immunity when he acts 'within the scope of his duties in initiating and pursuing a criminal prosecution.'" *Adams*, 656 F.3d at 401 (quoting *Imbler*, 424 U.S. at 410). *See also Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*); *Buchanan v. Metz*, 6 F. Supp. 3d 730, 744 (E.D. Mich. 2014) (citing *Burns*, 500 U.S. at 484). Thus, to the extent Plaintiff's claims against Garcia, Rogers and/or Walker are based on their initiation and/or pursuit of a July 24, 2019 disorderly conduct offense against Plaintiff, they are entitled to prosecutorial immunity.

### d. Executive city officials (Duggan and White)

As for Plaintiff's claims against Mayor Duggan and Police Chief White, Plaintiff alleges:

- On information & belief, Mr. Little on orders of Mike Duggan [and others] sought to get Ms. Warwick out of the building in retaliation for the content of her sign.

12

- Mike Duggan was a Biden supporter and on information [and] belief Mike Duggan either knew the Democratic ticket was going to be Biden-Harris or he didn't want Warwick in the building [because] Kamala Harris, Warwick *suspects* was in the building after being at the NAACP [National] Convention at the now TCF Center.  Also, Mike Duggan knows Ms. Warwick is a vocal critic of his administration, policies and the Detroit Land Bank Authority which he essentially controls.

- Warwick *believes* Securitas personnel Jesse Little, James Harris, and Greg McDuffey [McDuffee] Raymond Buford, Mike Duggan, Michael Hines and Warden Jodi DeAngelo and other detention & police personnel conspired to violate her rights & physical person[.]

(ECF No. 1, PageID.7, 12, 16 (emphases added).)  Also, when mentioning the City of Detroit's alleged pattern, practice, and custom of "abusing" those who disagree with the administration and permitting officers' use of "excessive force," alleges that "Police chiefs Craig & White *in her opinion* were complicit and allowed this to happen[.]"  (*Id.*, PageID.16 (emphasis added).)

Defendants contend "it is unclear what cause of actions, if any, Plaintiff has specifically alleged against either" Duggan or White.  (ECF No. 17, PageID.98.) As the Undersigned sees it, Plaintiff's allegations against Duggan and/or White are speculative and/or conclusory in nature.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"); *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (the Court "need not accept as true any 'conclusory legal allegations that do

not include specific facts necessary to establish the cause of action.'") (quoting

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1050 (6th Cir.

2011)).

Defendants also argue that Mayor Duggan and Police Chief White are

shielded by absolute executive immunity insofar as "Plaintiff alleges any state law

claims" against them.  (ECF No. 17, PageID.97.)  "A judge, a legislator, and the

elective or highest appointive executive official of all levels of government are

immune from tort liability for injuries to persons or damages to property if he or

she is acting within the scope of his or her judicial, legislative, or executive

authority."  Mich. Comp. Laws § 691.1407(5).  Still,

> . . . the highest executive officials of local government are not
> immune from tort liability for acts not within their executive
> authority.  The determination whether particular acts are within their
> authority depends on a number of factors, including the nature of the
> specific acts alleged, the position held by the official alleged to have
> performed the acts, the charter, ordinances, or other local law defining
> the official's authority, and the structure and allocation of powers in
> the particular level of government.

*Marrocco v. Randlett*, 431 Mich. 700, 710-711 (1988).  Based on Plaintiff's

aforementioned allegations against Duggan and White, the Court should agree that

"Plaintiff has failed to plead in avoidance of the absolute executive immunity[,]"

and, thus, Duggan and White are entitled to dismissal of any state law tort claim.

(ECF No. 17, PageID.98 (citing Mich. Comp. Laws § 691.1407(5).)

Finally, as Defendants correctly note, "James White was not the Police Chief when this incident allegedly occurred on July 24, 2019." (*Id.*) In fact, "James E. White was appointed Chief of the Detroit Police Department on June 1, 2021 and confirmed by Detroit City Council on September 21, 2021." (*See* https://detroitmi.gov/government/mayors-office/police-chief (last visited Apr. 11, 2023.)[3]

In sum, because Plaintiff's allegations against Duggan and White are too speculative or conclusory, because Duggan and White would be entitled to absolute executive immunity as to any state law tort claims, and because White was not the Police Chief at the time of the July 24, 2019 incident(s) in question, Plaintiff's claims against Duggan and White should be dismissed.[4]

---

[3] To be sure, White was sworn into office shortly before the November 16, 2021 dismissal of the disorderly conduct charge in Case No. U56162120 (36th District Court). But, Plaintiff's allegations against Police Chief White (and, for that matter, former Police Chief Craig) appear to concern their alleged complicity in allowing the alleged events of July 24, 2019 to happen.

[4] Furthermore, the Sixth Circuit "has consistently held that damage claims . . . arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original) (citation omitted). In other words, a plaintiff must allege the personal involvement of *each* defendant, at a minimum alleging facts showing that *each* defendant "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiff has also failed to meet this standard, which must be borne in mind as to all defendants.

### e.      Summation (The City of Detroit)

One additional observation is warranted here.  As to Defendant City of

Detroit, the operative pleading's "Statement of Claim" states only that "[t]he City

of Detroit has a pattern & practice custom of abusing people [who] disagree with

the administration and permit excessive use of force by officers[.]"  (*Id.*,

PageID.16.)  "Examples of abuse of persons [include] Detroit Will Breathe

protestors, arrest of vocal resident/Duggan administration critic Agnes Hitchcock,

physical harassment of water rights activist Demeeko Williams and more."  (*Id.*,

PageID.16-17.)  However, to the extent Plaintiff is trying to allege a claim "against

the City of Detroit . . . for a custom, pattern, or practice resulting in constitutional

violations within the meaning of *Monell v. Dep't of Social Services New York*

*City* , 436 U.S. 658 . . .(1978)[,]" *Ryan v. City of Detroit, MI*, 698 F. App'x 272,

278 (6th Cir. 2017), such a claim is speculative and/or conclusory in nature.  *Bell*

*Atl. Corp.*, 550 U.S. at 555; *Bickerstaff*, 830 F.3d at 396.  Referencing such

disparate and fact-specific events as mass protests by Detroit Will Breathe and the

arrests of certain other individuals in different circumstances, and then asking the

Court to draw an inference that *the handling of Plaintiff's arrest* (made in the

context of her admittedly trying to enter a public building with a sign) is part of a

general pattern and practice, is too conjectural to state a claim.  Because Plaintiff

has made only speculative and/or conclusory allegations against the City of Detroit, her claims against it should be dismissed.[5]

### 3. Defendants James Harris & Securitas Security Services (ECF No. 23)

In her complaint, Plaintiff identifies James Harris as located at 2 Woodward Avenue, Detroit, MI 48226 (*i.e.*, the CAYMC) and Securitas Security Services by its Dearborn, Michigan office (*see* https://www.securitasinc.com/contact-us/Michigan/Dearborn/).  (ECF No. 1, PageID.9-10 ¶¶ 17, 16.)  Considering these two Defendants are represented by the same counsel (*see* ECF Nos. 14, 15), this report assumes Harris is an employee, agent, and/or representative of Securitas Security Services.

Within the "Statement of Facts," Plaintiff mentions Harris and Securitas as follows:

> Securitas officials let [her] enter carrying her property with her which included a sign she earlier held at a rally.
>
> Jesse Little of Securitas called her back to the entry area.  He told her she couldn't bring in the sign.
>
> Warwick believes Securitas personnel Jesse Little, James Harris, and Greg McDuffey [McDuffee] Raymond Buford, Mike Duggan, Michael Hines and Warden Jodi DeAngelo and other detention & police personnel conspired to violate her rights & physical person[.] She suffered physical injury & great emotional distress as a result of

---

[5] Moreover, a *Monell* claim cannot be based on *respondeat superior*, as may well be the theory here.  *Bright v. Gallia Cty.*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Monell*, 436 U.S. at 691).

the batteries false arrest & incorrect withholding of evidence & false prosecut[ion][.]

(ECF No. 1, PageID.5, 7, 16.)

### a.    Fed. R. Civ. P. 12(b)(6)

In their motion, Harris and Securitas argue that Plaintiff's Complaint fails to comply with portions of Fed. Rules Civ. P. 8 and 10 and, thereby, "fails to inform the Defendants what claims have been made against them and what the factual or legal basis is for those claims." (ECF No. 23, PageID.165-166.) As a result, they argue that the complaint "fail[s] to state a claim upon which relief can be granted[,]" Fed. R. Civ. P 12(b)(6). (ECF No. 23, PageID.166.)

In her type-written response, Plaintiff agrees to the dismissal of Defendant Securitas Security Services, but she opposes the dismissal of James Harris. (ECF No. 39, PageID.228-229.) She apologizes for her hand-written complaint, claims to have "acquired a new computer and is learning how to use Google docs" with assistance from her sister and friends, but also claims to have had technical problems, which she "is still working on improving[.]" (*Id*., PageID.229, 232.) Of greater import, Plaintiff's brief mention of Harris within her "Statement of Claim" – *i.e.*, "Warwick believes Securitas personnel Jesse Little, James Harris, and Greg McDuffey [McDuffee] Raymond Buford, Mike Duggan, Michael Hines and Warden Jodi DeAngelo and other detention & police personnel conspired to violate

18

her rights & physical person[,]" (ECF No. 1, PageID.16) – is speculative and/or conclusory in nature. *Bell Atl. Corp.*, 550 U.S. at 555; *Bickerstaff*, 830 F.3d at 396.

### b.    Fed. R. Civ. P. 12(e)

Alternatively, pursuant to Fed. R. Civ. P. 12(e), Securitas and Harris request an order compelling Plaintiff to file a more definite statement.  (ECF No. 23, PageID.166.)  *See also E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) ("if in a particular case the complaint 'is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement.'") (quoting Fed. R. Civ. P. 12(e) (Advisory Committee Notes, 1946 Amendment)).

Plaintiff concurs with the "alternative request for a more definite statement which is legible/type-written and sets forth specific facts regarding James Harris on the day Ms. Warwick was manhandled by police at the [CAYMC], maliciously shoved out the door, brutally slammed to the ground (causing her to use crutches for about two weeks), and falsely arrested." (*Id*., PageID.229.)  She then argues that:  (a) her complaint should not be dismissed "before being given a chance to amend[;]" and, (b) the Court should order her "to file an amended, numbered complaint which is legible and comports with the Federal Rules of Civil Procedure and provides a more definite statement of the basis for her claims[.]" (*Id*., PageID.230.)

Plaintiff claims she "has been working on an amended complaint – the process of which became complicated as [she] last week learned more information relevant to some of the stresses she has been enduring[,]" and she "continues to have health struggles . . . which make[] functioning and concentration difficult." (ECF No. 39, PageID.232.)  In her February 13, 2023 response, she claims to "ha[ve] been dealing with very distracting and unpleasant development matters and tensions in her neighborhood," and asks the Court to "not take her mistakes as dilatory tactics or intentionally delay[,]" explaining that her mistakes are the "result [of] her mental and physical distress."  (*Id*., PageID.232-233.)  Plaintiff claims that "[a]mendment would not be futile here given that [she] can turn in a more legible complaint with line numbers."  (*Id*., PageID.233-234 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).)

To be clear, the Court does not doubt that Plaintiff "is making improvements in her word-processing and computer skills . . . [,]" which she claims "have never been a forte of hers."  (ECF No. 39, PageID.234.)  Nonetheless, as set forth in detail above (*see* Section II.E.1), the Court has been able to discern Plaintiff's hand-written "Statement of Claim" and does not here make a recommendation based on Plaintiff's handwriting or non-compliance with Fed. R. Civ. P. 10(b)'s

*form* requirement.  Quite simply, the Court has discerned the *content* of Plaintiff's allegations and recommends it is insufficient as to Defendant Harris.[6]

### 4.    Defendants Jodi DeAngelo and Ramel's (ECF Nos. 25, 32)

In her complaint, Plaintiff identifies Jodi DeAngelo as DDC's Warden and Ramel as a Nurse located at the Detroit Detention Center (DDC).  (ECF No. 1, PageID.11 ¶¶ 20, 21.)  The DDC "operates under an interagency agreement between the Detroit Police Department and the Michigan Department of Corrections."  (*See* https://www.michigan.gov/corrections/prisons/detroit-detention-center.)  It "holds all pre-arraigned detainees 17 years of age or older in the City of Detroit for up to 72 hours."  (*Id.*)  "The detainees at the DDC are booked, and fingerprinted by MDOC employees and are arraigned by either the 36th District Court or the 34th District Court."  (*Id.*)

Within the operative pleading's above-detailed "Statement of Claim," Plaintiff only mentions Ramel or DeAngelo as follows:

- She had bruises from being assaulted & battered at Detention Center – where Nurse Ramel *failed to properly screen her*[.]

---

[6] To the extent Plaintiff is "working on an amended complaint . . . [,]" (ECF No. 39, PageID.232), the Court referenced E.D. Mich. LR 15.1 in two of its January 2023 text-only orders (ECF 34, 38) and at least once noting that motions to amend should be accompanied by a "proposed amended pleading."  E.D. Mich. LR 15.1. Plaintiff's response (ECF No. 39) is unaccompanied by a proposed amended complaint.

- Warwick *believes* Securitas personnel Jesse Little, James Harris, and Greg McDuffey [McDuffee] Raymond Buford, Mike Duggan, Michael Hines and Warden Jodi DeAngelo and other detention & police personnel *conspired* to violate her rights & physical person[.]  She suffered physical injury & great emotional distress as a result of the batteries false arrest & incorrect withholding of evidence & false prosecut[ion][.]

(ECF No. 1, PageID.15, 16 (emphasis added).)

These allegations are speculative and *non sequitur* in nature, and Plaintiff has not filed a response.  Thus, the Court should agree with DeAngelo and Ramel that they "should be dismissed as there are no compensable claims plead against" them.  (ECF No. 25, PageID.176-179; ECF No. 32, PageID.216-221.)  *See also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

### 5. Defendants Hines Real Estate Firm and Michael Kennedy (ECF No. 29)

In her complaint, Plaintiff identifies the Hines Real Estate Firm as located at 2800 Post Oak Boulevard, Houston, Texas and Michael Kennedy as possibly located at 444 West Lake Street, Suite 2400, Chicago, Illinois.  (ECF No. 1, PageID.10 ¶¶ 18, 19.)  According to Hines's website, it "is one of the largest privately held real estate investors and managers in the world."  (*See* https://www.hines.com/ (last visited Apr. 10, 2023).)  It appears that Hines manages the CAYMC and that Michael Kennedy is the property manager.  (*See*

https://www.hines.com/properties/coleman-a.-young-municipal-building-detroit
(last visited Apr. 10, 2023).)

Within the operative pleading's above-detailed "Statement of Claim,"
Plaintiff only mentions Hines and/or Kennedy as follows:  "Warwick believes
Securitas personnel Jesse Little, James Harris, and Greg McDuffey [McDuffee]
Raymond Buford, Mike Duggan, Michael Hines and Warden Jodi DeAngelo and
other detention & police personnel conspired to violate her rights & physical
person[.]  She suffered physical injury & great emotional distress as a result of the
batteries false arrest & incorrect withholding of evidence & false prosecut[ion][.]"
(ECF No. 1, PageID.16 (emphasis added).)  Thus, and in the absence of a response
from Plaintiff, the Court should agree with Hines and Kennedy that Plaintiff's
complaint is not sufficient to provide notice to the Hines defendants of the claims
made against them, as is necessary to reasonably be able to respond to the
complaint."  (ECF No. 29, PageID.197-199.)  *See also* Fed. R. Civ. P. 8(a)(2) ("A
pleading that states a claim for relief must contain . . . a short and plain statement
of the claim showing that the pleader is entitled to relief[.]").

If the Court agrees with this conclusion, then it need not address Hines and
Kennedy's alternative argument – that "Plaintiff should be required to provide a
more definite statement under Rule 12(e)."  (ECF No. 29, PageID.199-200.)

**F.     Conclusion**

Plaintiff's "shotgun" approach of naming lots of people without detail as to why they are liable to her is unacceptable to the Court and creates needless expense and inefficiencies to all involved.  Rule 11 requires more than mere hunches and suspicions.  Fed. R. Civ. P. 11(b) ("Representations to the Court"). Notwithstanding the Court's explicit direction, which the Court gave to a licensed attorney (albeit an *in pro per* one), Plaintiff's efforts to file a proper motion to amend have already been twice unsuccessful (*see* ECF Nos. 31, 34, 37, 38) because of her failure, *inter alia*, to follow this Court's requirement that she attach her proposed amended pleading – an act which better advises the Court about exactly what Plaintiff seeks to do.  *See also* Fed. R. Civ. P. 15(a) ("Amendments Before Trial."), E.D. Mich. LR 15.1 ("Form of a Motion to Amend and Its Supporting Documentation").  Plaintiff has not undertaken to renew that effort in the two-and-a-half months since her last motion was stricken.  (*See* ECF No. 38.) "Although proceeding *pro se,* because [Plaintiff] is a licensed attorney practicing in this District, [her] complaint is not entitled to the liberal construction generally afforded to the pleadings of *pro se* plaintiffs."  *Ponte v. Chase Bank USA, N.A.*, No. 12-13901, 2013 WL 5818560, at *4 (E.D. Mich. Oct. 29, 2013); *see also Ross v. Bachand*, No. 14-CV-14122, 2015 WL 4644912, at *2 (E.D. Mich. Aug. 5,

2015), *Underhill v. Royer*, No. 14-CV-14768, 2015 WL 2384052, at *2 n.3 (E.D. Mich. May 19, 2015), *aff'd* (6th Cir. May 12, 2016).[7]

Accordingly, while I acknowledge certain movants' alternative Fed. R. Civ. P. 12(e) arguments (*see* ECF No. 23, PageID.166; ECF No. 29, PageID.199-200; Fed. R. Civ. P. 12(e)), I recommend against ordering Plaintiff to file a more definite statement; instead, I recommend dismissal of the claims against each of the twelve movants. "The goal of the complaint is to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bommarito v. Equifax Information Servs.*, 340 F.R.D. 566, 569 (E.D. Mich. 2022) (citing *Bell Atlantic*, 5550 U.S. 544, 555 (2007)). Plaintiff's original complaint – which is broad and conjectural – does not achieve that goal, and, given the history thus far, including Plaintiff's inability or unwillingness to present a proposed amended pleading when she had the opportunity to do so, it is doubtful that that goal will be achieved – *i.e.*, that the complaint's above-identified shortcomings will be cured – through either a more definite statement or by giving leave to amend. This lawsuit is now in its

---

[7] *See Sabeti v. Maron,* No. 12-cv-2392, 2012 WL 2001717, *2 (E.D.N.Y. June 4, 2012) (practicing attorney's complaint not entitled to liberal *pro se* construction); *Foulke v. VA State Police,* No. 6:12-cv-00006, 2012 U.S. Dist. LEXIS 33816, *1 n. 1 (W.D. Va. March 13, 2012) (active member of Virginia bar's complaint not entitled to extra measure of liberal construction); *Zanke–Jodway v. Capital Consultants, Inc.,* No. 1:08-cv-930, 2010 WL 776743, *7 (W.D. Mich. March 3, 2010) (attorney proceeding *pro se* is presumed to be aware of the rules of federal procedure).

ninth month, and this large cast of twelve defendants should not have to incur more cost and inconvenience in awaiting a more focused, substantial and plausible complaint.

Accordingly, the Court should:  **(1) GRANT** Defendants City of Detroit, Duggan, White, Garcia, Rogers, and Walker's motion to dismiss (ECF No. 17) (Section II.E.2); **(2) GRANT** Defendants Harris and Securitas Security Services' motion to the extent it seeks dismissal (ECF No. 23) (Section II.E.3); **(3) GRANT** Defendants Jodi DeAngelo's and Ramel's motions to dismiss (ECF Nos. 25, 32) (Section II.E.4); and, **(4) GRANT** Defendants' Hines and Kennedy's motion to dismiss (ECF No. 29) (Section II.E.5).

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  April 17, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE